**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**MCKINLEY LITTLEJOHN,**

       **Plaintiff,**

       **v.**                                         **ACTION NO. 2:04cv330**

**LARRY MOODY, Safety Manager,**
**MIKE GIBBS, Electric Foreman, and**
**CHUCK LLOYD, Counselor,**

       **Defendants.**

**OPINION AND FINAL ORDER**

Plaintiff, a Federal inmate, brings this pro se action pursuant to Bivens v. Six Unknown

Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), to redress alleged violations of

his constitutional rights.  Specifically, Plaintiff claims that he was shocked by an electrical surge

because a buffing machine that he was required to use did not have a ground-prong in its plug.

Plaintiff seeks injunctive relief and monetary damages as follows: $75,000 in punitive damages

from each defendant; $25,000 in compensatory damages from each defendant; and $25,000 in

mental and emotional damages from each defendant.  This action is before the Court on the

Motion of Mr. Larry Moody, Mr. Mike Gibbs, and Mr. Chuck Lloyd [hereinafter "the

Defendants"] to Dismiss the Complaint.  For the reasons set forth below, the Defendants' Motion

to Dismiss is **GRANTED**.

I. Procedural History and Preliminary Issues

Plaintiff filled out a Complaint Form, which was received by the Court on May 21, 2004,

and conditionally filed on May 27, 2004.  (Doc. 1.)  In an effort to determine whether Plaintiff

stated a Bivens claim adequately, the Court mailed Plaintiff a questionnaire on June 23, 2004,

and ordered him to complete it within thirty (30) days.  (Doc. 2.)  Plaintiff filled out and returned

the questionnaire, which the Court treated as an amendment to Plaintiff's Complaint.  (Doc. 3.)

Plaintiff qualified to proceed in forma pauperis, so the Court ordered his Complaint filed on

September 16, 2004.  (Doc. 6.)  Plaintiff was ordered to submit documentation of administrative

exhaustion, which he did on September 29, 2004.  (Doc. 7.)  By order of the Court, the Attorney

General of the United States, the United States Attorney, and the Defendants were served with

summons and copies of the Complaint.  See Docs. 8-11.

On December 14, 2004, the Defendants filed the instant Motion to Dismiss and a

memorandum in support thereof.  (Doc. 12.)  The next day, in accordance with Roseboro v.

Garrison, 528 F.2d 309 (4th Cir. 1975), Plaintiff was notified of his opportunity to respond to

Defendants' Motion with any material that he wished to offer in rebuttal.  (Doc. 13.)  Plaintiff

was also instructed that failure to submit any materials could result in an adverse judgment based

on Defendants' Motion.  Id.  Plaintiff timely responded to Defendants' Motion to Dismiss,

submitting a reply brief, which he actually styled a "rebuttal brief", five unsworn statements from

fellow inmates, and copies of the documents previously offered as evidence of administrative

exhaustion.  (Doc. 14.)  Plaintiff certifies that he mailed a copy of his reply to counsel for the

Defendants on January 3, 2005.

"Unless otherwise directed by the Court . . . the moving party may file a rebuttal brief

within three (3) days after the service of the opposing party's reply brief."  E.D. Va. LOCAL R.

CIV. P. 7(F).  When service is made by mail, FED. R. CIV. P. 6(e) adds three days, so a rebuttal

brief must be filed within six (6) days after service.  In computing a period of time allowed by the

local rules of a district court, "the day of the act, event, or default from which the designated

period of time begins to run shall not be included." FED. R. CIV. P. 6(a).  Unless the last day is a

weekend or legal holiday, it shall be counted.  Id.

In this case, Plaintiff's reply brief was mailed January 3, 2005.  Since the sixth day was a

Sunday, Defendant's rebuttal brief was due on January 10, 2005.  Defendant's rebuttal brief  was

received January 26, 2005.  A court may, for good cause shown, enlarge the period of time in

which an action is to occur.  Id. at (b).  Requests for extensions or enlargements of time must be

in writing and, if made after the period of time in which an act was to occur, must be

accompanied by a brief.  Local Rule 7(E) and (H).  Such requests are looked upon with disfavor

and may only be granted if the failure to act was the result of excusable neglect.  Rule 6(b); Local

Rule 7(H).  In this case, the Defendants made no request for extension or enlargement and

offered no reason for their untimely submission.  Therefore, the Defendants' rebuttal brief will

not be filed or considered by the Court.

## II. Factual Allegations

What follows are those facts that, given the deference owed to Plaintiff as a pro se

litigant, his Complaint/Brief in Support of Complaint ["Compl."], Questionnaire ["Q."], and

Reply Brief can be read to allege.  Since the Defendants have moved to dismiss Plaintiff's

Complaint, his factual allegations must be accepted as true.  Trulock v. Freeh, 275 F.3d 391, 405

(4th Cir. 2001) (citing Jenkins v. McKeithen, 395 U.S. 411, 421-22 (1969)).

A.  General Allegations:

> On or about 9:00 a.m. on February 25, 2004, Plaintiff was using
> the E-South Buffer.  Compl. at p. 5.

> Plaintiff did not take notice that the E-South Buffer did not have a
> "ground-prong" in the cord.  Id.

> Plaintiff was using the E-South Buffer around Cell # 24.  Id.

The door to Cell # 24 was open.  Id.

When Plaintiff reached out to close the door, his hand became locked to the door because of an electrical surge.  Id.

Plaintiff could not release either the door or the machine.  Id.

Electric current flowed through his body for approximately several minutes.  Id.

An inmate noticed Plaintiff's situation and pulled the cord from the wall.  Id.

Plaintiff was in severe pain and received several injuries.  Id.

Plaintiff was sent to the medical department and was diagnosed with the following injuries: pain in the right wrist; pain in the left upper chest area; tingling in the mouth; numbness in both lips; and blurred vision.  Id.

Plaintiff continues to have difficulty sleeping due to night sweats and nightmares about being electrocuted.  Id.

B.  Specific Allegations Against Defendant Lloyd:

Chuck Lloyd is a job counselor who is responsible for all of the equipment in the unit.  (Q. at p. 2.)  He assigns inmates jobs, and those jobs may involve using certain equipment.  Id.  The E-South Buffer had a history of shocking people; so, prior to the incident, Mr. Lloyd sent the buffer to the shop to be repaired.  (Reply Br. at Pilkington Statement.)

C.  Specific Allegations Against Defendants Moody and Gibbs:

Larry Moody is the safety manager who oversees all equipment prior to release and checks for malfunctions.  (Q. at p. 2.)  He knew the buffer was faulty, but still let it be returned to the unit without the "Safety Features".  Id.

Mike Gibbs is the foreman for the electrical shop.  (Q. at p. 2.)  He knew that the buffer had no ground-plug or safety grips when it was returned to the unit.  Id.

4

### III. Standard of Review

FED. R. CIV. P. 12(b)(6) allows a party to move for dismissal of an action for failure to state a claim upon which relief can be granted.  Ordinarily, a complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Labram v. Havel, 43 F.3d 918, 920 (4th Cir. 1995).  A court must construe a complaint in the light most favorable to the pleader and take his allegations as true.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Martin Marietta Corp. v. International Telecommuns. Satellite Org., 991 F.2d 94, 97 (4th Cir. 1992); Loe v. Armistead, 582 F.2d 1291, 1292 (4th Cir. 1978), cert. denied sub nom. Moffitt v. Loe, 446 U.S. 928 (1980).  Thus, a pro se complaint, no matter how inartfully pleaded, must survive a motion to dismiss for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Haines v. Kerner, 404 U.S. 519, 521 (1972) (per curiam).

In Estelle v. Gamble, the Supreme Court held that prison officials violate the Eighth Amendment when they are deliberately indifferent to the serious medical needs of inmates.  429 U.S. 97, 104-105 (1976).  Failure of prison officials to protect inmates from other sources of harm is subject to the same scrutiny.  Young v. City of Mt. Ranier, 238 F.3d 567, 575 (4th Cir. 2001) (citing Wilson v. Seiter, 501 U.S. 294, 303 (1991)).  Thus, prison officials violate the Eighth Amendment when they are deliberately indifferent to a substantial risk of harm.  Id.  In his Complaint, Plaintiff claims that his Eighth and Fourteenth Amendment rights were violated because he suffered a severe electric shock when he was required to use the E-South Buffer, which was known to be faulty.  Compl. at pp. 2, 6.  Plaintiff refers to his Fourteenth Amendment rights sporadically.  Regardless, where prison officials are accused of deliberate indifference to a

substantial risk of serious harm, the standard that applies to a Fourteenth Amendment claim "is

the same as that which applies in cases arising under the Eighth Amendment." Parrish v.

Cleveland, 372 F.3d 294, 302 n.11 (4th Cir. 2004) (citing Young, 238 F.3d at 575).

The Defendants attack Plaintiff's Complaint on two fronts: first, they argue that it fails to

state a viable constitutional claim and, second, they contend they are entitled to qualified

immunity even if the complaint does state a claim.  Mem. in Supp. Mot. Dismiss at pp. 3, 9.  To

evaluate an assertion of qualified immunity, the Court must make a two-step inquiry "in proper

sequence." Parrish, 372 F.3d at 301 (citing Saucier v. Katz, 533 U.S. 194, 200 (2001)).  The first

step requires the Court to determine whether "the facts alleged show [that] the officer's conduct

violated a constitutional right." Id.  Because the first step of the qualified immunity analysis

requires an analysis of the sufficiency of the constitutional claim, the Court need not analyze the

Defendants' "failure to state a claim" argument separately.  If Plaintiff's facts "do not establish a

violation of a constitutional right, the inquiry ends, and the plaintiff cannot prevail.  If the facts

do establish such a violation, the next step is to determine whether the right violated was 'clearly

established' at the time of the alleged offense." Id. (internal citations omitted).

## IV. Qualified Immunity Analysis

A.  Whether the Facts Alleged Show a Violation of a Constitutional Right

If the Defendants were deliberately indifferent to a substantial risk of harm to Plaintiff,

then they violated his rights under the Eighth Amendment.  But "deliberate indifference is a very

high standard - a showing of mere negligence will not meet it." Grayson v. Peed, 195 F.3d 692,

695 (4th Cir. 1999).  "Deliberate indifference requires a showing that the defendants actually

knew of and disregarded a substantial risk of serious injury to the [inmate]. . . ." Young, 238

F.3d at 575-576 (citing White ex. rel White v. Chambliss, 112 F.3d 731, 737 (4th Cir. 1997);

Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  At the motion to dismiss stage, the factual

allegations must establish that the official in question "subjectively recognized a substantial risk

of harm" and "subjectively recognized that his actions 'were inappropriate in light of that risk.'"

Parrish, 372 F.3d at 303 (citing Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

Recognition of risk requires an awareness of not just the factual circumstances but also the

danger that flows from those circumstances.  See id., stating that the official "actually must have

perceived the risk."  And for a response to be inappropriate, it must be *more than unreasonable*.

See Parrish, 372 F.3d at 307.

    Turning to the matter before the Court, Plaintiff does not allege that Defendant Lloyd

knew that the E-South Buffer was faulty at the time it was returned to the unit for use.  The

Complaint alleges that Defendant Lloyd was aware that the E-South Buffer had a previous

history of shocking people.  (Reply Br. at Pilkington Statement.)  But Plaintiff's own allegations

establish that Defendant Lloyd sent the E-South Buffer to be repaired.  Id.  This intervening

action gives rise to an assumption that the machine was safe when it was returned.  Defendant

Lloyd certainly cannot be imputed with knowledge of the machine's dangerousness, even when

his knowledge of the machine's prior history is viewed in the light most favorable to Plaintiff.

Because Plaintiff fails to allege that Defendant Lloyd knew of a substantial risk of harm at the

time of the incident, the Complaint does not state a claim upon which Plaintiff could prevail

against Defendant Lloyd.  The Motion to Dismiss is, therefore, GRANTED with respect to this

Defendant.

    Plaintiff's Complaint levels more particular allegations against Defendants Moody and

Gibbs than against Defendant Lloyd.  Taking those allegations as true, Defendant Moody, the

Safety Manager, "knew the buffer was faulty, but still let it be returned to the unit without the

'Safety Features.'" Q. at p. 2. And Defendant Gibbs, the Electrical Shop Foreman, "knew that the buffer had no ground-plug or safety grips when it was returned to the unit." Id. When determining if a prison official knew of a substantial risk, the relevant question is a subjective rather than objective one. The Court does not ask whether a reasonable safety manager or electrical shop foreman would have found the risk obvious. Instead, the Court reviews the factual allegations to see if this Safety Manager and this Electrical Shop Foreman did. When conducting that review, however, the Court may consider the special training and information that these Defendants presumably had.[1] See Parrish, 372 F.3d at 303 (citing Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995), for the proposition that a factfinder can conclude that an officer knew something "because he could not have failed to know of it").

Plaintiff alleges that Defendant Moody knew the E-South Buffer was faulty. Armed with that knowledge, it would have been more than obvious to a safety manager that the machine posed a substantial risk of shocking a user; so, it can be inferred that this Safety Manager knew that the E-South Buffer posed a substantial risk of shocking an inmate. Similarly, it would have been more than obvious to an electrical shop foreman that a buffer which did not have a ground-prong and safety grips posed a substantial risk; therefore, Defendant Gibbs knew that the E-South Buffer posed a substantial risk of shocking an inmate. Although this is a close case, the Complaint, when viewed in the light most favorable to the Plaintiff, establishes that Defendants Moody and Gibbs knew of a substantial risk of harm.

The Defendants' response to the known risk does not require significant analysis. According to the Complaint, the Defendants disregarded the risk and did what they would have

---

[1] At the motion to dismiss stage, it can be inferred that the Defendants had the training and knowledge appropriate to their positions. At later stages, Plaintiff would have to adduce such evidence.

done had the E-South Buffer been safe to use -- they returned it to the unit without comment or

warning.  Q at p. 2.  In light of the substantial risk that the E-South Buffer would shock any

inmate who used it, the inaction of Defendants Moody and Gibbs was more than unreasonable.

Such unreasonableness would have been so obvious that Defendants Moody and Gibbs could not

have failed to know that their inaction was inadequate.

Viewed in a light most favorable to the Plaintiff, the Complaint alleges facts sufficient to

establish that Defendants Moody and Gibbs violated Plaintiff's Eighth Amendment right to be

protected from substantial risk of significant injury.

B.  Whether the Constitutional Right was Clearly Established at the Time of the Violation

To determine whether a constitutional right which has been violated was clearly

established at the time of the violation, the right must be viewed "in light of the specific context

of the case, not as a broad general proposition."  Clem v. Corbeau, 284 F.3d 543, 549 (4th Cir.

2002) (citing Saucier v. Katz, 533 U.S. at 201).  The Court must look to see "[i]f the right was . .

. 'clearly established' in the 'specific context of the case' - that is, if it was . . . 'clear to a

reasonable officer' that the conduct in which he was allegedly engaged was unlawful in the

situation he confronted."  Id.  Unless the right was clear, the officer is entitled to qualified

immunity.  Id.  The Saucier analysis is designed "to ensure that before they are subjected to suit,

officers are on notice their conduct is unlawful."  533 U.S. at 206.  An officer is on notice if the

constitutional right has been specifically adjudicated previously.  A right has been specifically

adjudicated when a "closely analogous situation has been litigated and decided before the events

at issue."  Clem, 284 F.3d at 553 (citing Wilson v. Layne, 526 U.S. 603, 617 (2000)).  But an

officer "can still be on notice that [his] conduct violates established law even in novel factual

circumstances."  Hope v. Pelzer, 536 U.S. 730, 741 (2002).  This is so when the specific

constitutional right is "manifestly included within more general applications of the core

constitutional principle invoked." Clem, 284 F.3d at 553 (citing Buonocore v. Harris, 65 F.3d

347, 357 (4th Cir. 1995)). Therefore, the exact context of the case need not have been

specifically litigated; it is sufficient if pre-existing law "makes the unlawfulness of the act

'apparent.'" See id. (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

At the time of the incident, February 25, 2004, it was clearly established "that as a

component of their duty to provide inmates with humane conditions of confinement, prison

officials were required to 'take reasonable measures to guarantee the safety of the inmates.'"

Winfield v. Bass, 106 F.3d 525, 531 (4th Cir. 1997) (citing Farmer, 511 U.S. at 837.) However,

such a broad statement of the law is not enough. The relevant question is whether it would be

clear to a reasonable official that, in order to guarantee the safety of inmates, faulty work-

equipment had to be repaired, removed, or replaced. See Saucier, 533 U.S. at 202. After

researching Supreme Court and Fourth Circuit caselaw, as well as reviewing non-binding

precedent from other circuits and districts, the Court determines that the answer to that question

is "no".

Neither the Supreme Court nor the Fourth Circuit has addressed the specific issue of

whether work-related injuries in a prison environment can violate the Eighth Amendment. See

Warren v. State, 754 F. Supp. 150, 153 (D. Mo. 1990). The United States Court of Appeals for

the Fifth Circuit found that it was cruel and unusual punishment "to compel inmates to perform

physical labor that is beyond their strength, endangers their lives, or causes undue pain." Howard

v. King, 707 F.2d 215 (5th Cir. 1983). Yet this holding appears to apply to the quantity of labor,

i.e. the hours worked, rather than the quality of tools or equipment provided for laborers. Within

the United States Court of Appeals for the Eighth Circuit, there is a trend towards analyzing

prison work-equipment claims under the deliberate indifference standard. See Bibbs v. Armontrout, 943 F.2d 26 (8th Cir. 1991); Warren v. Missouri, 995 F.2d 130 (8th 1993). But, despite facts more egregious than those present in this case, the Eighth Circuit did not find that Bibbs or Warren even established violations of their constitutional rights.

The Court agrees with the Eighth Circuit that prison work-equipment claims should be analyzed under the deliberate indifference standard. After applying that standard to the facts of this case, the Court found that Defendants Moody and Gibbs violated Plaintiff's Eighth Amendment right to be protected from substantial risk of significant injury. See Section IV(A), *supra*. The Court's finding is due in large part to the fact that this case is at the motion to dismiss stage, whereas Bibbs and Warren were presented to the Eighth Circuit on appeal from rulings on summary judgment motions. Despite having found the constitutional violation, however, the Court cannot find that it would be clear to a reasonable official that failing to repair, remove, or replace the E-South Buffer would violate Plaintiff's Eighth Amendment rights. Facts similar to those presented here had not been specifically litigated prior to this incident, and, given the paucity of law on the issue, it is far from manifest that the safety of work-equipment should be viewed in the same manner as any other condition of confinement. Thus, pre-existing law did not make it apparent that failing to repair, remove, or replace the E-South Buffer would violate Plaintiff's constitutional rights. See Anderson v. Creighton, 483 U.S. at 641. Accordingly, Defendants Moody and Gibbs are entitled to qualified immunity for their actions.

## IV. Conclusion

For the aforementioned reasons, the Defendants' Motion to Dismiss is **GRANTED**.

Plaintiff is advised that he may appeal from this Opinion and Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States

Courthouse, 600 Granby Street, Norfolk, Virginia 23510.  Said written notice must be received

by the Clerk within thirty (30) days from the date of this order.  If plaintiff wishes to proceed in

forma pauperis on appeal, the application to proceed in forma pauperis is to be submitted to the

Clerk, United States Court of Appeals, Fourth Circuit, 1100 E. Main Street, Richmond, Virginia

23219.

The Clerk is **DIRECTED** to send a copy of this Opinion and Final Order to Plaintiff and

to counsel for the Defendants.

IT IS SO **ORDERED**.


                                              /s/
                                    HENRY COKE MORGAN, JR.
                              SENIOR UNITED STATES DISTRICT JUDGE


Norfolk, Virginia
August 1, 2005